1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALLSTATE INSURANCE COMPANY,

    Plaintiff,

  v.

HAZEL D. CAMERON, et al.,

    Defendants.

CASE NO. C05-1312JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on a summary judgment motion from Plaintiff Allstate Insurance Company ("Allstate") (Dkt. # 13).  Defendants Linda Franks and Jacob Franks, the non-moving parties, have not requested oral argument, and the court finds the motion appropriate for disposition on the basis of the parties' briefing and supporting evidence.  For the reasons stated below, the court GRANTS Allstate's motion.

## II.  BACKGROUND

On May 30, 1998, Defendants Jacob Franks, John Murray, and Bradley Mann[1] were allegedly involved in an altercation that resulted in a battery upon Glenston Anderson.  At the time, neither Jacob Franks nor his mother, Linda Franks, had a policy

---

[1]Allstate has voluntarily dismissed its claims against Defendant Mann.

ORDER – 1

of insurance from Allstate.  Subsequently, beginning on June 18, 1998, Allstate has continuously insured Linda Franks under a series of renter's and homeowner's policies.

On February 4, 2004, Mr. Anderson died.  The King County Medical Examiner concluded that, more likely than not, the cause of Mr. Anderson's death was a blow he received during the alleged battery in May 1998.

Hazel Cameron, the personal representative of Mr. Anderson's estate, has brought a wrongful death action in King County Superior Court against Defendants Jacob Franks, Bradley Mann, and John Murray.  Linda Franks has made a claim under her Allstate homeowner's insurance policy to require Allstate to defend Jacob Franks in the lawsuit, and to indemnify from any damage award.

Allstate brought this action to establish that it has no duty to defend or indemnify Jacob Franks.  The instant summary judgment motion seeks the same relief.

## III.  ANALYSIS

On a motion for summary judgment, the court is constrained to draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial.  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  When confronted with purely legal questions, the court does not defer to the non-moving party.

ORDER – 2

**A.      In the Instant Motion, the Fortuity Principle Does Not Bar Linda Franks'
Claim.**

At the outset, the court notes that both parties wrongly contend that the court can
dispose of this motion by applying the fortuity principle.  The fortuity principle, inherent
in every insurance policy, is that an insurer need only cover losses that are the result of a
fortuitous event, not losses that result from planned, intended, or anticipated events.
Alcoa v. Aetna Cas. & Sur. Co., 998 P.2d 856, 878-79 (Wash. 2000).  In Washington, the
fortuity principle is called the "known risk principle."  Id. at 878.  It prevents
"collect[ion] on an insurance claim for a loss *that the insured subjectively knew would
occur at the time the insurance was purchased*."  Id. (citing Pub. Util. Dist. No. 1 v. Int'l
Ins. Co., 881 P.2d 1020, 1030 (Wash. 1994)) (emphasis supplied).

Factual questions prevent the court from deciding if the fortuity principle applies
here.  Linda Franks avers that she knew nothing of her son's May 30, 1998 altercation
when she purchased insurance in June 1998.  On summary judgment, the court must
accept the truth of her statement.  If Allstate is to prevail on this motion, therefore, it must
point to a Washington rule that bars coverage for events occurring before the policy
period, even if the insured is unaware of those events.

**B.      The Language of the Complaint Against Jacob Franks and Linda Franks'
Insurance Policy Govern Allstate's Duty to Defend or Duty to Indemnify.**

The court begins its analysis of Allstate's obligations by examining Allstate's duty
to defend Jacob Franks.  The court must review the allegations of the complaint against
Mr. Franks to see if it "complaint contains any factual allegations which could render the
insurer liable to the insured under the policy."  Hayden v. Mut. of Enumclaw Ins. Co., 1
P.3d 1167, 1172 (Wash. 2000).  The court must construe the complaint liberally; if the
complaint's allegations are "conceivably covered," then the insurance company must
provide a defense.  Id.  The duty to defend is broader than the duty to indemnify.  N.H.

ORDER – 3

Indem. Co. v. Budget Rent-A-Car Sys., Inc., 64 P.3d 1239, 1243 (Wash. 2003).  The key inquiry is "whether the allegation[s of the complaint against the insured], if proven true, would render [the insurer] liable to pay out on the policy."  Farmers Ins. Co. v. Romas, 947 P.2d 754, 758 (Wash. Ct. App. 1997).  The court must therefore examine not only the complaint against the insured, but the language of the policy.

### 1.    The Complaint Against Jacob Franks

Ms. Cameron alleges that Jacob Franks and others hosted a party on May 30, 1998.  Several of the guests became intoxicated.  In the key allegation of the complaint, Ms. Cameron states as follows:

> During the early evening hours, [Mr. Anderson] arrived [at the party] whereupon the defendants, and each of them, tortiously assaulted and battered and negligently aided and abetted in a concerted series of actions to assault and batter [Mr. Anderson], engaging in an affray of their own making which cumulated in the Defendant John Orion Murray striking a severe blow to the forehead of [Mr. Anderson] with a large and heavy beer mug which shattered upon impact inflicting mortal wounds.

Cameron Compl. at 2.  Beginning on September 17, 1998, Mr. Anderson suffered an intracerebral hemorrhage that caused him to slip into a "persistent vegetative state until [his] death on February 4, 2004."  Id.  More than four months later, the King County Medical Examiner "concluded, from evidence previously unavailable, that the proximate cause of death was more likely than not the blow [Defendant Murray] delivered."  Id.

Construed liberally, the complaint alleges that Jacob Franks' negligence on May 30, 1998 was a cause of the blow to Mr. Anderson's head, and therefore was a cause of his death almost six years later.  Even construed liberally, however, the complaint does not suggest that Mr. Franks had any involvement with Mr. Anderson after May 30, 1998.

### 2.    The Language of Linda Franks' Insurance Policy

The court now examines Linda Franks' homeowner's policy to determine if the allegations of Ms. Cameron's complaint, if true, would obligate Allstate to indemnify

ORDER – 4

Jacob Franks.  In Washington, interpretation of insurance policy language is a question of law for the court.  Overton v. Consolidated Ins. Co., 38 P.3d 322, 325 (Wash. 2002).  The court must give the terms of the policy a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance."  Id. (internal quotation omitted).  Terms defined within a policy are to be construed as defined, while undefined terms are given their ordinary meaning.  Boeing Co. v. Aetna Cas. & Sur. Co., 784 P.2d 507, 511 (Wash. 1990).

If the policy language on its face is fairly susceptible to two different, but reasonable interpretations, ambiguity exists, and the court will apply the interpretation most favorable to the insured.  Allstate Ins. Co. v. Peasley, 932 P.2d 1244, 1246 (Wash. 1997) (cited in Petersen-Gonzales v. Garcia, 86 P.3d 210 (2004));  Allstate Ins. Co. v. Hammonds, 865 P.2d 560, 562 (Wash. Ct. App. 1994) (ambiguity exists "when, reading the contract as a whole, two reasonable and fair interpretations are possible.").  A court must construe ambiguity against the insurer "even where the insurer may have intended another meaning."  Allstate Ins. Co., 865 P.2d at 562.

Linda Franks seeks coverage under her policy in effect from April 2003 to April 2004.  The policy "applies only to losses or occurrences that take place during the policy period."  Foley Decl. Ex. C. at 4.  The policy explains that an "[o]ccurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage."  Id. at 3.  To indicate that the term "occurrence" has a consistent meaning throughout the policy, the policy uses the term in bold type.  The specific portion of the policy under which Linda Franks seeks coverage is the "Family Liability Protection" clause, which obligates Allstate to "pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an

ORDER – 5

occurrence to which this policy applies, and covered by this part of the policy." Id. at 22.
The word "occurrence" in the Family Liability Protection clause is in bold type.

The parties' dispute is narrow. There is no dispute that Ms. Cameron's complaint
could obligate Jacob Franks to pay damages because of bodily injury. Putting aside
concerns over the timing of the incident, there is no dispute, at least in this motion, over
whether the Family Liability Protection clause would cover a damage award against Mr.
Franks.[2] The only dispute is whether Jacob Franks' potential legal liability "aris[es] from
an occurrence to which [Linda Franks'] policy applies." Her policy covers only
"occurrences that take place during the policy period . . . ." The policy does not,
however, explicitly define when an "occurrence . . . take[s] place." At the risk of being
grammatically clumsy, the question before the court is when does an occurrence occur?

**C.   An Occurrence "Takes Place" When an Act of an Insured First Results in Injury to an Aggrieved Party.**

Allstate claims that, as a matter of law, all injuries to Mr. Anderson arose from an
uncovered "occurrence" in May 1988. The Franks disagree, and identify two potential
covered occurrences. The first is the accrual of Ms. Cameron's cause of action for
wrongful death. The second is Mr. Anderson's death in 2004.

**1.   The Accrual of an Action Against an Insured is Not an Occurrence.**

The court concludes that, as a matter of law, the accrual of Ms. Cameron's cause
of action for wrongful death is not a covered occurrence. The Franks contend, and the
court concurs, that a wrongful death action accrues upon the death of the decedent.
Nothing in the language of Linda Franks' policy, however, suggests that the accrual of a
cause of action is an occurrence. An "occurrence" is an "accident . . . resulting in bodily

---

[2]Allstate has not yet asserted the Family Liability Protection coverage exclusion for
intentional acts of an insured. Foley Decl. Ex. C. at 22.

ORDER – 6

injury," not a cause of action.  In an "occurrence policy," coverage "depends on when the negligent act or omission occurred and not when the claim was asserted."  Safeco Title Ins. Co. v. Gannon, 774 P.2d 30, 34 (Wash. Ct. App. 1989) (quoting Gulf Ins. Co. v. Dolan, Fertig & Curtis, 433 So. 2d 512, 515 (Fla. 1983)).  For example, in White v. Allstate Ins. Co., 98 P.3d 496, 498 (Wash. Ct. App. 2004), the court held that the date of the insureds' loss was not the date their condominium association imposed a special assessment for water intrusion damage, but rather the date the water damage occurred. The policy in White, like Linda Franks' policy, covered only "occurrences that take place during the policy period."  Id.  The court held that the assessment was not itself "a loss under the terms of the policy," but rather "a financial obligation . . . imposed on the [insureds] as a result of a loss."  Id.  The court therefore held that "the timing of the direct physical loss – i.e., the water intrusion damage – . . . determines whether there is coverage."  Id.  Because the insureds had no insurance policy on the date of the loss, the court denied coverage.  Id. (reversing trial court).  Under White and the terms of the policy-in-suit, the date Ms. Cameron's claim against Jacob Franks accrued is of no consequence in determining coverage.[3]

Despite authority to the contrary, the Franks claim that it is "well settled Washington law that, for purposes of defining when an occurrence requiring coverage

---

[3]Some policies contain language triggering coverage on the date of a lawsuit or other obligation to pay.  For example, in Transcon. Ins. Co. v. Wash. Pub. Util. Dist. Util. Sys., 760 P.2d 337, 347 (Wash. 1988), the policy obligated the insurer to "indemnify any officer, director, or employee for 'any amount' he bec[ame] legally obligated to pay while acting in the scope of his duties."  The court contrasted the policy language with policies "in which coverage is triggered by 'acts or omissions' during the policy period."  Id.; see also id. at 345 (noting that applicable coverage provision did not use the definition of "occurrence" found elsewhere in the policy).  The Family Liability Protection in Linda Franks' policy, by contrast, covers only legal obligations arising from "occurrences" as defined elsewhere in the policy. Foley Decl. Ex. C at 22

ORDER – 7

took place, it is not the time that the wrongful act was committed, but the time when the cause of action arises." Defs.' Opp'n at 3. In support of this "well-settled" law, they cite a single case: <u>Wellbrock v. Assurance Co. of Am.</u>, 951 P.2d 367 (Wash. Ct. App. 1998). <u>Wellbrock</u> supports an entirely different proposition, one that is ultimately fatal to the Franks' claim that Mr. Anderson's death is an "occurrence" that triggers coverage.

### 2.   Under <u>Wellbrock</u>, Mr. Anderson's Death is a May 1998 "Occurrence."

In <u>Wellbrock</u>, the potentially liable insured caused damage to trees that, much later, fell and killed a woman in an adjacent property. <u>Id.</u> at 369. Unlike Linda Franks, the insured had a policy of insurance when it caused the damage to the trees. <u>Id.</u> Unlike Linda Franks, the accident and the resulting death occurred when the insured no longer had an insurance policy. <u>Id.</u> The insurance policy in <u>Wellbrock</u>, much like the policy in this case, covered only "bodily injury" that was caused by a covered "occurrence." <u>Id.</u> at 370; <u>see also id.</u> at 369 n.3 (quoting terms of policy). After reviewing Washington case law, the court held that a "coverage-triggering 'occurrence' [is] the event causing injury to the complaining party, not the earlier event that created potential for future injury." <u>Id.</u> at 372. The court therefore denied coverage. <u>Id.</u>

The holding in <u>Wellbrock</u> dooms the Franks' claim. In this case, the "event causing injury to the complaining party," <u>Wellbrock</u>, 951 P.2d at 372, is unquestionably the 1998 altercation in which Mr. Anderson suffered a blow to the head. Ms. Cameron's complaint suggests no other potential cause of Mr. Anderson's injury, and thus no other occurrence for which the Franks can seek coverage or a defense from Allstate. The Franks' focus on the <u>Wellbrock</u> court's refusal to attach significance to "the earlier event that created potential for future injury," <u>id.</u>, is unavailing. In <u>Wellbrock</u>, the "earlier event" was the damage to trees on an adjoining property, an event that caused no injury to the aggrieved party. By contrast, the "earlier event" in this case was the May 1998

ORDER – 8

altercation, an event that caused an immediate bodily injury to Mr. Anderson. This distinction is critical under Washington law.

### 3. Other Washington Cases Are Consistent with <u>Wellbrock</u>.

The <u>Wellbrock</u> holding is consistent with other Washington cases holding "that the time of an occurrence for insurance coverage purposes is determined by when damages or injuries took place." <u>Transcon. Ins. Co. v. Wash. Pub. Util. Dist.'s Util. Sys.</u>, 760 P.2d 337, 345 (Wash. 1988) (citing cases). To prevail, the Franks would have to establish that when a single act of negligence causes multiple injuries over time, each injury is an "occurrence" that takes place on the date of the injury. The Franks point to no authority for this proposition. <u>But see</u> <u>Truck Ins. Exch. v. Rohde</u>, 303 P.2d 659, 663 (Wash. 1956) (holding that a series of injuries arising from a single cause is a single occurrence or accident).

Although Washington courts have examined various permutations of acts and injuries occurring before, during, and after policy periods, none has arrived at the result the Franks urge this court to reach. Courts have acknowledged that an "occurrence" policy can impose liability on an insurer for acts that occurred during the policy period and resulted in an injury after the policy period. <u>E.g.</u>, <u>Weyerhaeuser Co. v. Commercial Union Ins. Co.</u>, 15 P.3d 115, 129 (Wash. 2000). The Franks, by contrast, can point to no act within their policy period.

Courts have imposed liability on a series of insurers where the insured was forced to defend against a claim that it had caused a third party to unknowingly suffer a continuous injury spanning several policy periods. <u>E.g.</u>, <u>Gruol Constr. Co. v. Ins. Co. of N. Am.</u>, 524 P.2d 427, 429 (Wash. Ct. App. 1974). The <u>Gruol</u> court confronted dry rot from progressive seepage of water caused by the insured's negligence during construction. <u>Id.</u> at 429. The court based its holding on the conclusion that the "resulting

ORDER – 9

damage was continuous . . . ." Id. at 430.  In this case, the damage to Mr. Anderson was not continuous; it was discrete.  The fact that it later developed into a more serious injury than the initial injury is of no consequence.

The court in Castle & Cooke v. Great Am. Ins. Co., 711 P.2d 1108, 1112-13 (Wash. Ct. App. 1986), ruled that an insurer had a duty to provide a defense against a class action employment discrimination suit because some of the discrimination occurred within the policy period, even though much of it occurred before the policy period.  The court had no occasion, however, to consider whether the policy obligated the insurer to indemnify its insured for injuries that occurred before the policy period.

In short, the court is aware of no Washington court that has imposed liability on an insurer for an act that took place entirely before a policy period and first resulted in an injury to the aggrieved party before the policy period.  Cf. White, 98 P.3d at 498 (finding no coverage where initial loss preceded policy period).

### 4.    Allstate Has No Duty to Defend or Indemnify the Franks.

The court holds that, under the policy language at issue here, where an insured commits an act that results in an injury before the inception of his policy, no occurrence takes place within the policy period, even if the injury worsens or leads to other injuries during the policy period.  No Washington court has arrived at this precise result,[4] but the result is nonetheless consistent with Washington law.  Because the act that gave rise to Jacob Franks' potential liability occurred in May 1998 and caused an immediate injury, Allstate has no obligation to defend Jacob Franks or indemnify him.

---

[4]The court notes that a court applying Pennsylvania law has announced essentially the same rule.  D'Auria v. Zurich Ins. Co., 507 A.2d 857, 861 (Pa. Super. Ct. 1986) ("An occurrence happens when the injurious effects of the negligent act first manifest themselves in a way that would put a reasonable person on notice of injury.").

ORDER – 10

1

## IV.  CONCLUSION

2

  For the reasons stated above, the court GRANTS Allstate's motion for summary

3

judgment (Dkt. # 13).  The court cannot determine if there are claims remaining in this

4

action, and thus leaves it to Allstate to request judgment from the court.

5

  Dated this 8th day of February, 2006.

6

7

8

                     _____

9

                     JAMES L. ROBART
                     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 11